UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:

G&C INVESTMENT CORP.,                           Case No.: 17-20150-LMI
                                                Chapter 7
        Debtor.
_____/
                                                Adv. Case No.: _____

MARCIA T. DUNN, Chapter 7
Trustee of the Bankruptcy Estate
of G&C INVESTMENT CORP.,

        Plaintiff,

v.

GOODWILL FUNDING, INC.,
a Florida corporation,
CHAREL WINSTON, an individual,
and WILLIS GEORGE VICTUM A/K/A
WILLIS VICTORY, an individual.

        Defendants.
_____/

**COMPLAINT TO AVOID AND RECOVER**
**FRAUDULENT TRANSFERS, UNJUST ENRICHMENT AND FRAUD**

        Marcia T. Dunn, as Chapter 7 trustee of the bankruptcy estate of G&C Investment Corp.

("***Trustee***"), sues Goodwill Funding, Inc. ("***GW***"), Charel Winston ("***Ms. Winston***"), and Willis

George Victum a/k/a Willis Victory ("***Mr. Victory***," and collectively with GW and Ms. Winston,

the "***Defendants***"), and alleges as follows:

**I.      JURISDICTION AND VENUE**

        1.      This is an adversary proceeding brought pursuant to *Fed. R. Bank. P.* 7001, 11

U.S.C. § 541, 544, 548 and 550, Chapter 726, Fla. Stat., and other applicable law.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

3.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (H) and (O), and the Trustee consents to the entry of final orders and judgment by the Bankruptcy Court.

4.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.    <u>PARTIES</u>

5.      The Trustee is the duly appointed Chapter 7 Trustee of the bankruptcy estate of G&C Investment Corp. (the "***Debtor***") and brings this action solely in her capacity as trustee.

6.      GW is Florida corporation that conduced business in Miami-Dade County, Florida at all relevant times.

7.      Ms. Winston is an individual residing in California, is over the age of 18, and is *sui juris*.

8.      Mr. Victory is an individual residing in California, is over the age of 18, and is *sui juris*.

## III.    <u>PROCEDURAL BACKGROUND</u>

9.      On August 10, 2017 (the "***Petition Date***"), this case was commenced by the filing of an involuntary petition for relief under Chapter 7, Title 11 of the United States Bankruptcy Code (the "***Bankruptcy Case***").

10.     On November 7, 2017, the Court entered its *Order for Relief in Involuntary Case* (the "***Relief Date***").

11.     On December 20, 2017, the Trustee was appointed as the duly authorized and acting Chapter 7 Trustee of the Debtor's bankruptcy estate.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

IV.    **GENERAL BACKGROUND**

    A.    **Mr. Garrido's Fraud Through the Debtor**

12.    As early as 2010, Mr. Jorge Garrido caused the Debtor to raise monies from investors to purportedly invest in different ventures – ranging from gem deals, funding start-up projects, participating in humanitarian platforms, and commodities trading.  The common theme for all the investments was the false promise of generating large returns in a very short period of time, and in exchange the Debtor would earn a relatively small advance fee.

13.    Mr. Garrido was the Debtor's owner, officer and controlling person.

14.    On October 1, 2018, Mr. Garrido was indicted by the United States of America as a result of the fraud he orchestrated through the Debtor (the ***"Indictment"***).

15.    On May 23, 2019, Mr. Garrido pled guilty to a number of his crimes alleged in the Indictment, and on August 7, 2019, Mr. Garrido was sentenced to 70 months in federal prison and ordered to pay over $5,000,0000 in restitution.  Attached as **Exhibit A** is Mr. Garrido's Factual Proffer admitting to his crimes and his fraud (the "***Fraud***").

    B.    **The Debtor's Transfers to GW**

16.    Prior to the Petition Date, the Debtor made three sets of transfers to GW, totaling $670,000, as follows:

-    $70,000 to Robert Anderson, Esq. (as escrow agent), on August 19, 2013, of which $69,000 was thereafter transferred to GW (the "***$70k Transfer***");

-    $250,000 to Robert Anderson, Esq. (as escrow agent) on September 17, 2013, of which $245,000 was immediately transferred to GW (the "***$250k Transfer***"); and

-    $350,000 to GW on September 24, 2013, (the "***$350k Transfer***").

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

Collectively, the $70k Transfer, $250k Transfer, and $350k Transfer shall be collectively referred to as the *"Transfers."*

17.    Attached as **Exhibit B** is a schedule of the Transfers.

**C.    The $250k and $70k Transfers**

18.    The Debtor made the $250k Transfer to GW pursuant to a "Memorandum of Understanding Agreement dated September 15, 2013 (the *"MOUA Agreement"*).  A copy of the MOUA Agreement is attached as **Exhibit C**.

19.    Specifically, the MOUA Agreement provides that the Debtor was seeking "project funding with [GW] and/or its affiliates," and in exchange for a payment of $250,000 from the Debtor, GW would wire $6,000,000 to the Debtor within 20 banking days.

20.    Pursuant to the terms of the MOUA Agreement, the Debtor made the $250k Transfer to GW.

21.    GW never delivered any monies to the Debtor pursuant to the MOUA Agreement.

22.    Moreover, GW never provided any value to the Debtor for the $70k Transfer.

23.    Upon information and belief, and upon receiving the $250k Transfer and $70k Transfer from Robert Anderson, Esq., GW transferred: $253,500 for the benefit of Mr. Victory to accounts he owned or controlled in the name of family members' trust fund and a business account (collectively, the *"Victory Transfers"*); and $69,000 to Ms. Winston or for her benefit (the *"First GW Transfer"*), with the remaining amount of $5,600 being kept by Robert Anderson, Esq. as "escrow fees."

**D.    The $350k Transfer**

24.    Upon information and belief, the Debtor made the $350k Transfer to GW as a loan such that GW would in turn lend money to a company called Venado Resources, LLC (*"Venado"*).

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

In turn, Venado was to purchase a collateralized mortgage obligation (***"CMO"***) from a company called BCNG, Inc. (***"BCNG"***).    Upon the purchase of the CMO, BCNG was to provide a significant return to Venado, and upon information and belief, Venado would in turn share a substantial portion of the return with GW (the ***"BCNG/Venado Transaction"***).

25.    Upon information, and unbeknownst to the Debtor, GW transferred $118,000 to Ms. Winston or for   her benefit (the ***"Second GW Transfer"***) of the $350k Transfer, and transferred the remaining monies (i.e. $232,000) to Venado and BCNG.

26.    Upon information and belief, Venado and BCNG were both wrongdoers that stole the $232,000.

### E.    Ms. Winston and Mr. Victory

27.    Ms. Winston and Mr. Victory, who were business associates, worked together to lure the Debtor into making the above-referenced transactions to GW.

28.    Specifically, each promised the Debtor significant returns in exchange for the Transfers.

29.    At a minimum, both Ms. Winston and Mr. Victory knew that the MOUA Agreement was false and untrue.

30.    Mr. Victory has been involved in frauds similar to the fraud perpetrated on the Debtor, and on June 9, 2017, stipulated to a desist and refrain order issued by the Department of Business Oversight of the State of California.

31.    Unbeknownst to the Debtor, the $250k Transfer and $70k Transfer made pursuant to the MOUA Agreement were kept by Ms. Winston and Mr. Victory (through accounts he owned or controlled).

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

32.     In addition, Ms. Winston, on behalf of GW, failed to disclose to the Debtor the true purpose of the $350k Transfer and that she would keep $118,000 of the $350k Transfer as her "profit."

33.     Not surprisingly, at no point in time did GW ever provide any value, let alone refund the Transfers, to the Debtor.

34.     On multiple occasions, the Debtor demanded from the Defendants the return of the Transfers.

35.     Despite numerous promises to return the Transfers to the Debtor, the Transfers have not been returned and the Defendants have kept the Transfers.

36.     Neither GW, Mr. Victory, nor Ms. Winston ever provided any consideration to the Debtor in exchange for the Transfers.

37.     The Debtor was insolvent at all relevant times by virtue of the fact the Debtor was an entity engaged in fraudulent activities and was always unprofitable, had no meaningful assets other than funds which accompanied an obligation (either debt or equity) equal to or more than the funds themselves, and the numerous tort and other claims held by investors defrauded by the Debtor, which claims (in pertinent part) preceded the Transfers.

38.     All conditions precedent to the filing of this action have been performed, have occurred, or have been waived.

**COUNT I**
**Avoidance and Recovery of Fraudulent Transfers Pursuant to**
**Fla. Stat. §§ 726.105(1)(a) and 726.108**
**Against GW**

39.     The Trustee reasserts the allegations set forth in paragraphs 1 through 39 as if fully set forth herein.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

40.     The Debtor made the $250k Transfer and $70k Transfer (collectively, the **_"$320k_**
**_Transfers"_**) to GW within four years of the Petition Date.

41.     GW is the initial transferee of the $320k Transfers.

42.     The Debtor made the $320k Transfers to GW with the actual intent to hinder, delay,
or defraud the Debtor's creditors.

**WHEREFORE**, the Trustee requests that the Court enter judgment in favor of the Trustee
and against GW (i) avoiding the $320k Transfers pursuant to Section 726.105(1)(a), Fla. Stat., and
or otherwise applicable law; (ii) awarding the Trustee a money judgment in an amount equal to
the amount or value of the $320k Transfers, plus interest and costs, pursuant to Section 726.108,
Fla. Stat., and (iii) granting such other and further relief as this Court shall deem appropriate.

## COUNT II
### Avoidance and Recovery of Fraudulent Transfers Pursuant to
### Fla. Stat. §§ 726.105(1)(b) and 726.108
### Against GW

43.     The Trustee reasserts the allegations set forth in paragraphs 1 through 39 as if fully
set forth herein.

44.     The Debtor made the $320k Transfers to GW within four years of the Petition Date.

45.     GW is the initial transferee of the $320k Transfers.

46.     The Debtor made the $320k Transfers to GW without receiving reasonably
equivalent value in exchange for the $320k Transfers.

47.     At the time of the $320k Transfers, the Debtor was engaged in, or was about to
engage in, a business or a transaction for which the remaining assets were unreasonably small in
relation to the business or transaction.

48.     At the time of the $320k Transfers, the Debtor intended to incur or believed that it
would incur, debts that were beyond its ability to pay as such debts matured.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

49.     At the time the $320k Transfers were made, the Debtor had at least one unsecured creditor that could have avoided such transfer(s).

50.     By reason of the foregoing, the $320k Transfers to GW are avoidable and recoverable pursuant to  Sections 726.105(1)(b) and 726.108, Fla. Stat., and or otherwise applicable law.

**WHEREFORE**, the Trustee requests that the Court enter judgment in favor of the Trustee against GW (i) avoiding the $320k Transfers pursuant to Section 726.105(1)(b), Fla. Stat., and or otherwise applicable law; (ii) awarding the Trustee a money judgment in an amount equal to the amount or value of the $320 Transfers, plus interest and costs, pursuant to Section 726.108, Fla. Stat., and (iii) granting such other and further relief as this Court shall deem appropriate.

<u>**COUNT III**</u>
**Avoidance and Recovery of Fraudulent Transfers Pursuant to**
**Fla. Stat. §§ 726.106(1) and 726.108**
**Against GW**

51.     The Trustee reasserts the allegations in paragraphs 1 through 39 as if fully set forth herein.

52.     The Debtor made the $320k Transfers to GW within four years of the Petition Date.

53.     GW is the initial transferee of the Transfers.

54.     The Debtor made the $320k Transfers to GW without receiving reasonably equivalent value in exchange for the $320k Transfers.

55.     At the time of the $320k Transfers, the Debtor was insolvent or became insolvent as a result of the $320k Transfers.

56.     At the time the $320k Transfers were made, the Debtor had at least one unsecured creditor that could have avoided such transfer(s).

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

57.     By reason of the foregoing, the $320k Transfers to GW are avoidable and recoverable pursuant to Sections 726.106(1) and 726.108, Fla. Stat., and or otherwise applicable law.

**WHEREFORE**, the Trustee requests that the Court enter judgment in favor of the Trustee against GW (i) avoiding the $320k Transfers pursuant to Section 726.105(1)(b), Fla. Stat., and or otherwise applicable law; (ii) awarding the Trustee a money judgment in an amount equal to the amount or value of the $320k Transfers, plus interest and costs, pursuant to Section 726.108, Fla. Stat., and (iii) granting such other and further relief as this Court shall deem appropriate.

**COUNT IV**
**Avoidance and Recovery of Fraudulent Transfers Pursuant to**
**Fla. Stat. §§ 726.109**
**Against Ms. Winston**

58.     The Trustee reasserts the allegations set forth in paragraphs 1 through 43, 45 – 51, and 53 – 58, as if fully set forth herein.

59.     The $320K Transfers to GW are avoidable pursuant to §§ 726.105(1)(a), 726.105(1)(b), 726.106(1), and 726.108(1)(a), Fla. Stat.

60.     Ms. Winston is the subsequent transferee of the First GW Transfer.

61.     Ms. Winston did not take the First GW Transfer in good faith, for value, nor without knowledge of the voidability of the transfer avoided.

**WHEREFORE**, the Trustee requests that the Court enter judgment in favor of the Trustee and against Ms. Winston (i) avoiding the First GW Transfer Transfers pursuant to § 726.109 and or otherwise applicable law; (ii) awarding the Trustee a money judgment in an amount equal to the amount or value of the First GW Transfer, and (iii) granting such other and further relief as this Court shall deem appropriate.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

## COUNT V
### Avoidance and Recovery of Fraudulent Transfers Pursuant to
### Fla. Stat. §§ 726.109
### Against Ms. Winston

62.    The Trustee reasserts the allegations set forth in paragraphs 1 through 43, 45 – 51, and 53 – 58, as if fully set forth herein.

63.    The $350K Transfer to GW is avoidable pursuant to §§ 726.105(1)(a), 726.105(1)(b), 726.106(1), and 726.108(1)(a), Fla. Stat.

64.    Ms. Winston is the subsequent transferee of the Second GW Transfer.

65.    Ms. Winston did not take the Second GW Transfer in good faith, for value, nor without knowledge of the voidability of the transfer avoided.

**WHEREFORE**, the Trustee requests that the Court enter judgment in favor of the Trustee and against Ms. Winston (i) avoiding the Second GW Transfer Transfers pursuant to § 726.109 and or otherwise applicable law; (ii) awarding the Trustee a money judgment in an amount equal to the amount or value of the Second GW Transfer, and (iii) granting such other and further relief as this Court shall deem appropriate.

## COUNT VI
### Avoidance and Recovery of Fraudulent Transfers Pursuant to
### Fla. Stat. §§ 726.109
### Against Mr. Victory

66.    The Trustee reasserts the allegations set forth in paragraphs 1 through 43, 45 – 51, and 53 – 58, as if fully set forth herein.

67.    The $320K Transfers to GW are avoidable pursuant to §§ 726.105(1)(a), 726.105(1)(b), 726.106(1), and 726.108(1)(a), Fla. Stat.

68.    Mr. Victory is the subsequent transferee of the Victory Transfers.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

69.     Mr. Victory did not take the Victory Transfers in good faith, for value, nor without knowledge of the voidability of the transfer avoided.

**WHEREFORE**, the Trustee requests that the Court enter judgment in favor of the Trustee and against Mr. Victory (i) avoiding the Victory Transfers pursuant to § 726.109 and or otherwise applicable law; (ii) awarding the Trustee a money judgment in an amount equal to the amount or value of the Victory Transfers, and (iii) granting such other and further relief as this Court shall deem appropriate.

### COUNT VII
**Avoidance and Recovery of Fraudulent Transfers Pursuant to
11 U.S.C. § 541 and Fla. Stat. §§ 726.105(1)(a) and 726.108
Against Ms. Winston**

70.     The Trustee reasserts the allegations set forth in paragraphs 1 through 43, 45 – 51, and 53 – 58, as if fully set forth herein.

71.     At all times from in or around August 19, 2013, the Debtor was a creditor of GW.

72.     GW made the First GW Transfer for the benefit of/to Ms. Winston with the actual intent to hinder, delay or defraud the Debtor.

**WHEREFORE**, the Trustee requests that the Court enter judgment in favor of the Trustee and against Ms. Winston (i) avoiding the First GW Transfer pursuant to Section 726.105(1)(a), Fla. Stat., and or otherwise applicable law; (ii) awarding the Trustee a money judgment in an amount equal to the amount or value of First GW Transfer, plus interest and costs, pursuant to Section 726.108, Fla. Stat., and (iii) granting such other and further relief as this Court shall deem appropriate.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

## COUNT VIII
### Avoidance and Recovery of Fraudulent Transfers Pursuant to
### 11 U.S.C. § 541 and Fla. Stat. §§ 726.105(1)(b) and 726.108
### Against Ms. Winston

73.     The Trustee reasserts the allegations set forth in paragraphs 1 through 43, 45 – 51, and 53 – 58, as if fully set forth herein.

74.     At all times from in or around August 19, 2013, the Debtor was a creditor of GW.

75.     GW made the First GW Transfer for the benefit of/to Ms. Winston without receiving in exchange reasonably equivalent value.

76.     At the time of the First GW Transfer, GW was engaged in, or was about to engage in, a business or a transaction for which the remaining assets were unreasonably small in relation to the business or transaction.

77.     At the time of the First GW Transfer, GW intended to incur or believed that it would incur, debts that were beyond its ability to pay as such debts matured.

**WHEREFORE**, the Trustee requests that the Court enter judgment in favor of the Trustee and against Ms. Winston (i) avoiding the First GW Transfer pursuant to Section 726.105(1)(b), Fla. Stat., and or otherwise applicable law; (ii) awarding the Trustee a money judgment in an amount equal to the amount or value of First GW Transfer, plus interest and costs, pursuant to Section 726.108, Fla. Stat., and (iii) granting such other and further relief as this Court shall deem appropriate.

## COUNT IX
### Avoidance and Recovery of Fraudulent Transfers Pursuant to
### 11 U.S.C. § 541 and Fla. Stat. §§ 726.106 and 726.108
### Against Ms. Winston

78.     The Trustee reasserts the allegations set forth in paragraphs 1 through 43, 45 – 51, and 53 – 58, as if fully set forth herein.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

79.    At all times from in or around August 19, 2013, the Debtor was a creditor of GW.

80.    GW made the First GW Transfer for the benefit of/to Ms. Winston without receiving in exchange reasonably equivalent value.

81.    At the time of the First GW Transfer, GW was insolvent.

**WHEREFORE**, the Trustee requests that the Court enter judgment in favor of the Trustee and against Ms. Winston (i) avoiding the First GW Transfer pursuant to Section 726.106, Fla. Stat., and or otherwise applicable law; (ii) awarding the Trustee a money judgment in an amount equal to the amount or value of First GW Transfer, plus interest and costs, pursuant to Section 726.108, Fla. Stat., and (iii) granting such other and further relief as this Court shall deem appropriate.

<u>**COUNT X**</u>
**Avoidance and Recovery of Fraudulent Transfers Pursuant to**
**11 U.S.C. § 541 and Fla. Stat. §§ 726.105(1)(a) and 726.108**
**Against Ms. Winston**

82.    The Trustee reasserts the allegations set forth in paragraphs 1 through 43, 45 – 51, and 53 – 58, as if fully set forth herein.

83.    At all times from in or around August 19, 2013, the Debtor was a creditor of GW.

84.    GW made the Second GW Transfer for the benefit of/to Ms. Winston with the actual intent to hinder, delay or defraud the Debtor.

**WHEREFORE**, the Trustee requests that the Court enter judgment in favor of the Trustee and against Ms. Winston (i) avoiding the Second GW Transfer pursuant to Section 726.105(1)(a), Fla. Stat., and or otherwise applicable law; (ii) awarding the Trustee a money judgment in an amount equal to the amount or value of Second GW Transfer, plus interest and costs, pursuant to Section 726.108, Fla. Stat., and (iii) granting such other and further relief as this Court shall deem appropriate.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

<u>**COUNT XI**</u>
**Avoidance and Recovery of Fraudulent Transfers Pursuant to**
**11 U.S.C. § 541 and Fla. Stat. §§ 726.105(1)(b) and 726.108**
**Against Ms. Winston**

85.     The Trustee reasserts the allegations set forth in paragraphs 1 through 43, 45 – 51, and 53 – 58, as if fully set forth herein.

86.     At all times from in or around August 19, 2013, the Debtor was a creditor of GW.

87.     GW made the Second GW Transfer for the benefit of/to Ms. Winston without receiving in exchange reasonably equivalent value.

88.     At the time of the Second GW Transfer, GW was engaged in, or was about to engage in, a business or a transaction for which the remaining assets were unreasonably small in relation to the business or transaction.

89.     At the time of the Second GW Transfer, GW intended to incur or believed that it would incur, debts that were beyond its ability to pay as such debts matured.

**WHEREFORE**, the Trustee requests that the Court enter judgment in favor of the Trustee and against Ms. Winston (i) avoiding the Second GW Transfer pursuant to Section 726.105(1)(b), Fla. Stat., and or otherwise applicable law; (ii) awarding the Trustee a money judgment in an amount equal to the amount or value of Second GW Transfer, plus interest and costs, pursuant to Section 726.108, Fla. Stat., and (iii) granting such other and further relief as this Court shall deem appropriate.

<u>**COUNT XII**</u>
**Avoidance and Recovery of Fraudulent Transfers Pursuant to**
**11 U.S.C. § 541 and Fla. Stat. §§ 726.106 and 726.108**
**Against Ms. Winston**

90.     The Trustee reasserts the allegations set forth in paragraphs 1 through 43, 45 – 51, and 53 – 58, as if fully set forth herein.

14

91.     At all times from in or around August 19, 2013, the Debtor was a creditor of GW.

92.     GW made the Second GW Transfer for the benefit of/to Ms. Winston without receiving in exchange reasonably equivalent value.

93.     At the time of the Second GW Transfer, GW was insolvent.

**WHEREFORE**, the Trustee requests that the Court enter judgment in favor of the Trustee and against Ms. Winston (i) avoiding the Second GW Transfer pursuant to Section 726.106, Fla. Stat., and or otherwise applicable law; (ii) awarding the Trustee a money judgment in an amount equal to the amount or value of Second GW Transfer, plus interest and costs, pursuant to Section 726.108, Fla. Stat., and (iii) granting such other and further relief as this Court shall deem appropriate.

## COUNT XIII
### Avoidance and Recovery of Fraudulent Transfers Pursuant to
### 11 U.S.C. § 541 and Fla. Stat. §§ 726.105(1)(a) and 726.108
### Against Mr. Victory

94.     The Trustee reasserts the allegations set forth in paragraphs 1 through 43, 45 – 51, and 53 – 58, as if fully set forth herein.

95.     At all times from in or around August 19, 2013, the Debtor was a creditor of GW.

96.     GW made the Victory Transfers for the benefit of/to Mr. Victory with the actual intent to hinder, delay or defraud the Debtor.

**WHEREFORE**, the Trustee requests that the Court enter judgment in favor of the Trustee and against Mr. Victory (i) avoiding the Victory Transfers pursuant to Section 726.105(1)(a), Fla. Stat., and or otherwise applicable law; (ii) awarding the Trustee a money judgment in an amount equal to the amount or value of Victory Transfers, plus interest and costs, pursuant to Section 726.108, Fla. Stat., and (iii) granting such other and further relief as this Court shall deem appropriate.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

<u>COUNT IX</u>
**Avoidance and Recovery of Fraudulent Transfers Pursuant to**
**11 U.S.C. § 541 and Fla. Stat. §§ 726.105(1)(b) and 726.108**
**Against Mr. Victory**

97.     The Trustee reasserts the allegations set forth in paragraphs 1 through 43, 45 – 51, and 53 – 58, as if fully set forth herein.

98.     At all times from in or around August 19, 2013, the Debtor was a creditor of GW.

99.     GW made the Victory Transfers for the benefit of/to Mr. Victory without receiving in exchange reasonably equivalent value.

100.    At the time of the Victory Transfers, GW was engaged in, or was about to engage in, a business or a transaction for which the remaining assets were unreasonably small in relation to the business or transaction.

101.    At the time of the Victory Transfers, GW intended to incur or believed that it would incur, debts that were beyond its ability to pay as such debts matured.

**WHEREFORE**, the Trustee requests that the Court enter judgment in favor of the Trustee and against Mr. Victory (i) avoiding the Victory Transfers pursuant to Section 726.105(1)(b), Fla. Stat., and or otherwise applicable law; (ii) awarding the Trustee a money judgment in an amount equal to the amount or value of Victory Transfers, plus interest and costs, pursuant to Section 726.108, Fla. Stat., and (iii) granting such other and further relief as this Court shall deem appropriate.

<u>COUNT XV</u>
**Avoidance and Recovery of Fraudulent Transfers Pursuant to**
**11 U.S.C. § 541 and Fla. Stat. §§ 726.106 and 726.108**
**Against Mr. Victory**

102.    The Trustee reasserts the allegations set forth in paragraphs 1 through 43, 45 – 51, and 53 – 58, as if fully set forth herein.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

103.    At all times from in or around August 19, 2013, the Debtor was a creditor of GW.

104.    GW made the Victory Transfers for the benefit of/to Mr. Victory without receiving in exchange reasonably equivalent value.

105.    At the time of the Victory Transfers, GW was insolvent.

**WHEREFORE**, the Trustee requests that the Court enter judgment in favor of the Trustee and against Mr. Victory (i) avoiding the Victory Transfers pursuant to Section 726.106, Fla. Stat., and or otherwise applicable law; (ii) awarding the Trustee a money judgment in an amount equal to the amount or value of the Victory Transfers, plus interest and costs, pursuant to Section 726.108, Fla. Stat., and (iii) granting such other and further relief as this Court shall deem appropriate.

<u>**COUNT XVI**</u>
**Unjust Enrichment**
**Against GW**

106.    The Trustee reasserts the allegations set forth in paragraphs 1 through 43, 45 – 51, and 53 – 58, as if fully set forth herein.

107.    The Debtor made the $320k Transfer and $70k Transfer to GW pursuant to the MOUA Agreement.

108.    Specifically, each promised the Debtor significant returns in exchange for the Transfers.

109.    At a minimum, both Ms. Winston and Mr. Victory knew that the MOUA Agreement was false and untrue.

110.    The Trustee pleads this count in the alternative to her legal claims.

111.    The Trustee does not have an adequate remedy at law, and therefore, is entitled to relief under the equitable doctrine of unjust enrichment.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

112.    The Debtor conferred a benefit on GW by virtue of the Transfers.

113.    GW had knowledge of the benefit of the Transfers conferred upon it.

114.    GW voluntarily accepted and retained the benefit of the Transfers conferred upon it.

115.    Under the circumstances, it would be inequitable for GW to retain the benefit of the Transfers conferred upon it.

**WHEREFORE**, the Trustee requests that the Court enter judgment in favor of the Trustee and against GW in the amount of the Transfers, plus interest and costs, and granting such other and further relief as this Court shall deem appropriate.

## COUNT XVII
### Fraud
### Against GW, Ms. Winston, and Mr. Victory

116.    The Trustee reasserts the allegations set forth in paragraphs 1 through 43, 45 – 51, and 53 – 58, as if fully set forth herein.

117.    The Debtor made the $320 Transfers to GW pursuant to the MOUA Agreement.

118.    Both Ms. Winston and Mr. Victory promised the Debtor significant returns in exchange for the $320 Transfers.

119.    Specifically, the MOUA Agreement provides that the Debtor was seeking "project funding with [GW] and/or its affiliates," and in exchange for a payment of $250,000 from the Debtor, GW would wire $6,000,000 to the Debtor within 20 banking days.

120.    GW never delivered any monies to the Debtor pursuant to the MOUA Agreement.

121.    Both Ms. Winston and Mr. Victory knew that the MOUA Agreement was false and untrue, and that the representations made by them regarding the MOUA Agreement were false, which representations were relied on by the Debtor.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

122.    As a result of GW's, Ms. Winston's, and Mr. Victory's fraud, and the Debtor's reasonable reliance thereon, the Debtor has suffered damages.

**WHEREFORE**, the Trustee requests that the Court enter judgment in favor of the Trustee and against GW, Ms. Winston, and Mr. Victory in the amount of the $320k Transfers, plus interest

Dated: November 6, 2019.

Respectfully submitted,

s/ Daniel N. Gonzalez
Daniel N. Gonzalez, Esquire
Florida Bar No. 592749
dgonzalez@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221
*Attorneys for the Trustee*

and

Michael P. Dunn, Esq.
Florida Bar No. 100705
michael.dunn@dunnlawpa.com
DUNN LAW, P.A.
66 West Flagler Street, Suite 400
Miami, Florida 33130
Telephone: (786) 433-3866
Telecopy: (786) 260-0269
*Co-Counsel for Plaintiff, Marcia T. Dunn,*
*as Chapter 7 Trustee*

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 18-20784-CR-ALTONAGA

UNITED STATES OF AMERICA,

v.

JORGE GARRIDO,

    Defendant.
_____/

### FACTUAL PROFFER

Had this case proceeded to trial, JORGE GARRIDO and the Government agree that the Government would have proven the following facts beyond a reasonable doubt. The parties agree that these facts, which are true, do not include all facts known to the Government and the defendant relating to the Indictment. The parties agree that these facts are sufficient to prove the guilt of the Defendant as to Count 1 of the above-referenced Indictment:

From in or around 2010, through in or around June 2017, in the Southern District of Florida and elsewhere, the Defendant conspired with Peter Block and others, to defraud certain individuals. This Defendant and others participated in a scheme to defraud that raised money from advance fees, purportedly for, among other things, funding start-up projects, participating in humanitarian platforms, monetizing bank instruments, and engaging in platform trading. The victims relied on the Defendant's materially false and fraudulent representations, and then GARRIDO and others misappropriating these advance fees for the defendant and his co-conspirators' personal use.

This conspiracy occurred by means of materially false and fraudulent pretenses, as well as material omissions, to knowingly devise a scheme and artifice to defraud and to obtain money and property through the delivery of certain wire communications, contrary to Title 18, United States Code, Section 1343, and all in violation of Title 18, United States Code, Section 1349.

GARRIDO was the president, director and registered agent of G & C Investment Corp. ("G&C"), which was a Florida corporation that purportedly had "relationships with suppliers, buyers, and sellers of fuel and sugar products" and acted as a commodities trader. G&C claimed to "have developed close ties with the most important people in the industry."

In or around 2010, GARRIDO approached potential investors and promoted himself as someone who could generate large sums of money in return for a relatively small advance fee. In or around 2010, GARRIDO began receiving investor funds via U.S. mail and bank wires, and depositing their money into bank accounts he controlled. In return for money detained from investments in advance, GARRIDO promised to generate staggering returns of 15 times, 20 times, or more of an investor's advance fee. GARRIDO promised to provide returns within a short time

EXHIBIT A

frame, typically 30 to 45 banking days. GARRIDO eased investor concerns about the safety and security of their principal by having investors transfer their money to Block, a co-conspirator attorney escrow account, where, according to GARRIDO, the funds could not be transferred from the attorney to GARRIDO before GARRIDO generated returns on the investments. In truth, after investors wired their money to the account, the attorney took a portion of the funds for his own benefit and wired the rest of the advanced fee money to GARRIDO.

GARRIDO also guaranteed the safety of investors' principal by stating that he owned U.S. Treasury Notes and claimed the notes as collateral. In truth, the U.S. Treasury Notes did not exist. Furthermore, GARRIDO and his co-conspirators used false and fraudulent emails from a financial advisor at a financial institution purporting to vouch for the existence of the notes. GARRIDO also guaranteed the safety of investors' principal by claiming that he held a standby letter of credit from JP Morgan Chase as collateral. In truth, the standby JP Morgan Chase letter of credit did not exist. Furthermore, GARRIDO and his co-conspirators used false and fraudulent financial documents to investors to vouch for the existence of the standby letter of credit.

This Defendant and his co-conspirators made numerous materially false and fraudulent statements to investors and withheld material facts, including, but not limited to; that banking instruments provided to investors by GARRIDO, including but not limited to a $30,000,000 "Standby Letter of Credit" from JP Morgan Chase, were legitimate and authentic banking instruments; that GARRIDO never had funds to repay investors' principal or returns; that GARRIDO and his co-conspirators would use nearly all the investor funds for their personal benefit.

Date: 5/23/19

By: _____
Roger Cruz
Assistant United States Attorney

Date: 5\23\19

By: _____
Samuel Rabin
Attorney for Defendant

Date: 5/23/19

By: _____
Jorge Garrido
Defendant

2

| Bank Name | Account Name | Account No. | Date | Transaction Type | Check No. | Payee | Amount |
|---|---|---|---|---|---|---|---|
| Transfers to Robert J. Anderson, Esquire and Goodwill Funding | | | | | | | |
| | | | | | | | |

Transfers to Robert J. Anderson, Esquire and Goodwill Funding
During the Period of August 19, 2013 through September 24, 2013

*(Sorted Chronologically )*

| Bank Name | Account Name | Account No. | Date | Transaction Type | Check No. | Payee | Amount |
|---|---|---|---|---|---|---|---|
| HSBC | G&C Investment Corp. | 362041024 | 08/19/13 | Wire | N/A | Robert J. Anderson, Esquire | $ (70,000.00) |
| HSBC | G&C Investment Corp. | 362041024 | 09/17/13 | Debit | N/A | Robert J. Anderson, Esquire | (250,000.00) |
| | | | | | | **Total Transfers to Robert J. Anderson, Esquire** | **$ (320,000.00)** |
| | | | | | | | |
| HSBC | G&C Investment Corp. | 362041024 | 09/24/13 | Wire | N/A | Goodwill Funding Inc. | $ (350,000.00) |
| | | | | | | **Total Transfers to Goodwill Funding** | **$ (350,000.00)** |
| | | | | | | | |
| | | | | | | **Total Transfers to Robert J. Anderson, Esquire and Goodwill Funding** | **$ (670,000.00)** |

EXHIBIT B



**Memorandum of Understanding Agreement (MOUA)**
Drafted on this 15th day of September, 2013
By and between
Goodwill Funding Inc., and/or its affiliates
And
Jorge Garrido, President of G&C Investment Corp

**WHEREAS, Goodwill Funding Inc., and/or its affiliates,** has a desire to enter into a funding transaction with **Jorge Garrido, President of G&C Investment Corp**, and is offering **G&C Investment Corp** project funding in the amount of $6,000,000 (Six Million USD Dollars). Funding commences in 24 hours with a funding schedule as follows; $2,500,000 (Two Million Five Hundred Thousand US Dollars in /or before 48 hours or less and $3,500,000 (Three Million Five Hundred Thousand US Dollars) within 20 banking days, for a total of 6 million dollars.

**WHEREAS, G&C Investment Corp**, is seeking project funding with **Goodwill Funding Inc. and/or its affiliates**. **G&C Investment Corp** has the capacity to wire transfer the amount of $250,000 USD (Two Hundred Fifty Thousand US Dollars) into a designated Attorney Robert Anderson Esquire Escrow Account as a participation fee, within 24 hours of signing this agreement.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants contained in this Agreement, the parties agree as follows:

<u>Goodwill Funding, and/or its affiliates Responsibility</u>: After receipt of the funds that are to be wired into Goodwill Funding Inc. designated Attorney Robert Anderson Esquire Escrow Account by **G&C Investment Corp** in the amount of $250,000 USD (Two Hundred Fifty Thousand US Dollars), will trigger Funders, and/or its affiliate's collateral, - $500,000.00 of a publically traded stock with a margin call through Morgan Stanley. **Goodwill Funding Inc., and/or its affiliates** will wire **G&C Investment Corp**, $6,000,000 (Six Million USD Dollars). Funding commences in 24 hours with a funding schedule as follows; $2,500,000 (Two Million Five Hundred Thousand US Dollars) in /or before 48  hours or less and $3,500,000 (Three Million Five Hundred Thousand US Dollars)within 20 banking days, for a total of 6 million dollars.

EXHIBIT C

Upon receiving $250,000 USD (Two Hundred Fifty Thousand US Dollars) transferred by **G&C Investment Corp** into a **Goodwill Funding Inc.** designated Attorney Robert Anderson Esquire Escrow Account, the following shall occur;

1. Within the same day will trigger Funders, and/or its affiliate's collateral, - $500,000.00 of a publically traded stock with a margin call through Morgan Stanley.
2. Funding commences in 24 hours with a funding schedule as follows; $2,500,000 (Two Million Five Hundred Thousand US Dollars)in /or before 48 hours or less and $3,500,000 (Three Million Five Hundred Thousand US Dollars)within 20 banking days, for a total of 6 million dollars.
3. **Default Clause**. If either party fails to perform to the obligations of this agreement a Notice of Default Letter will be issued by either party. The Party in Non-Performance will have 24 hours to comply with this Agreement or be in Default.
   a) If a true default happens and upon written demand the escrow attorney shall be responsible for getting the stock converted to cash by Knight and Free the attorneys that hold the blocked stock and send Jorge Garrido, President of G&C Investment Corp $350,000 US. Dollars.

**Jorge Garrido, President of G&C Investment Corp Responsibility**: **G&C Investment Corp** responsibility will be to arrange for a participation fee, of $250,000 USD (Two Hundred Fifty Thousand US Dollars). via wire transfer into a designated Attorney Robert Anderson Esquire Escrow Account (See EXHIBIT "A") Such transaction may come directly from **G&C Investment Corp** or from any third party arranged by **G&C Investment Corp**.

## TO SUMMARIZE

a) **G&C Investment Corp** shall arrange for the participation fee via wire transfer of $250,000 USD (Two Hundred Fifty Thousand US Dollars) into a designated Attorney Robert Anderson Esquire Escrow Account. Within the same day will trigger Funders, and/or its affiliate's collateral, - $500,000.00 of a publically traded stock with a margin call through Morgan Stanley.

b) Funding commences in 24 hours with a funding schedule as follows; ; $2,500,000 (Two Million Five Hundred Thousand US Dollars)in /or before 48 hours or less and $3,500,000 (Three Million Five Hundred Thousand US Dollars)within 20 banking days, for a total of 6 million dollars.

## EXHIBIT "A"

### ATTORNEY CLIENT / TRUST ACCOUNT TO WIRE THE $250,000.00

| | |
|---|---|
| **Atty. Escrow Account** | Bank of America |
| **Atty. Name** | Robert Anderson Esquire |
| **Atty. Address** | 1510 the Alameda, San Jose, CA 95126 |
| **Account Number** | 164100273631 |
| **Swift Account Number** | BOFAUS3N |
| **Branch Number** | 000101 |

| Routing Number | 121000358 |
|---|---|
| On Behalf Of | **G&C Investment Corp** |

a) <u>Benefit of the Transaction:</u> **The funds generated from the above stated transaction will enable G&C Investment Corp to receive project funding in 24 hours with a funding schedule as follows; $2,500,000 (Two Million Five Hundred Thousand US Dollars)in /or before 48 hours or less and $3,500,000 (Three Million Five Hundred Thousand US Dollars)within 20 banking days, for a total of 6 million dollars, after wire transferring funds in the amount of $250,000 USD (Two Hundred Fifty Thousand US Dollars). G&C Investment project Corp, may place all or a portion of their money of this return with Goodwill Funding Inc., and/or its affiliates, for further project funding efforts under a separate MOU.**

<u>Term:</u> This agreement shall commence on the Effective Date as signed below and shall remain in effect until the completion of the transaction.

1. <u>Binding Effect</u>: This Agreement shall be binding upon and inure to the benefit of the Parties and their Agents.

2. <u>Headings:</u> The headings contained in this Agreement are used for reference purpose only, and shall not be construed to define, limit or affect the construction or interpretation hereof.

3. <u>Amendments:</u> This Agreement may be amended only in writing, signed and sealed by the signatory parties to the contract.

4. <u>Entire Agreement:</u> This Agreement contains the entire Agreement between the parties hereto relating to the rights herein granted and the obligations herein. Any oral representation or modifications concerning the Agreement must be in writing signed by all parties hereto.

5. <u>Construction:</u> This Agreement has been drafted by both parties and as a result any ambiguities shall not be construed for or against either party.

6. <u>Counterparts:</u> This Agreement may be executed in two (2) or more counterparts, and each counterpart shall be deemed to be an original.

This contract can and will be modified to support changes in business climate with proper addendum and consent by both parties.

## Legal Disclosures

1. <u>Proprietary Information:</u>  **G&C Investment Corp** acknowledges that its relationship with the **Goodwill Funding Inc., and/or its affiliates** is one of high trust and confidence and that, in the course of its service to **G&C Investment Corp** will have access to Proprietary Information. **Goodwill Funding Inc., and/or its affiliates** acknowledges that its relationship

with the **G&C Investment Corp** is one of high trust and confidence and that, in the course of its service to **G&C Investment Corp. Goodwill Funding Inc., and/or its affiliates** will have access to Proprietary Information. Both parties agree to hold all such Proprietary Information (as defined herein) in strict confidence, not to disclose it to others or use it in any way, commercially or otherwise, except in performing the Services, and not to allow any unauthorized person access to it, either before or after expiration or termination of this Agreement. Both parties further agree to take all action necessary to protect the confidentiality of the Proprietary Information including, without limitation, implementing and enforcing operating procedures to minimize the possibility of unauthorized use or copying of the Proprietary Information. For purposes of this Agreement, "Proprietary Information" shall mean all information (whether or not patentable and whether or not copyrightable), by way of illustration and not limitation, owned, possessed or used by the **G&C Investment Corp**, including, without limitation, the existence, terms and conditions of this Agreement, any Invention (as defined herein), formula, vendor information, customer information, apparatus, equipment, trade secret, process, research, report, technical data, know-how, computer program, software, software documentation, hardware design, technology, marketing or business plan, forecast, unpublished financial statement, budget, license, price, cost and employee list that is communicated to, learned of, developed or otherwise acquired **Goodwill Funding Inc., and/or its affiliates** in the course of **G&C Investment Corp** Project Funding. Upon termination of this Agreement or at any other time upon request by the **Goodwill Funding Inc., and/or its affiliates.**

2. **Goodwill Funding Inc., and/or its affiliates and G&C Investment Corp. do hereby attest and warrant he/she has never been convicted under, or been the subject of, any investigation with respect to:**

   § The Bank Secrecy Act/Anti-Money Laundering (latest version); and

   § The Drug Trafficking Act of 1986 (latest version); and

   § The Criminal Act of 1988 (latest version); and

   § The Prevention of Terrorism (Temporary Provisions) Act of 1989 (latest version); and

   § The Criminal Justice (International Cooperation) Act of 1990 (latest version); and

   § The Criminal Justice Act of 1993 (latest version); and

   § The Anti-Terrorism Act and the USA Patriot Act I and II (2003 and latest revision); and

   § The Electronic Funds Transfer Act 1978 (latest version); and

   § Homeland Security Act of 2002 (latest version).

3. **Equitable Remedies:** Because the Services are personal and unique and because **G&C Investment Corp** will have access to Proprietary Information of the **Goodwill Funding Inc., and/or its affiliates**, and vice versa, both parties will have the right to enforce this Agreement and any of its provisions by injunction, specific performance or other equitable relief without prejudice to any other rights and remedies that either party may have for a breach of this Agreement.

4. **Governing Law; Jurisdiction:** This Agreement shall be governed by and construed in accordance with the internal laws of the State of California without giving effect to any choice or conflict of law provision or rule (whether of the State of California or any other

jurisdiction) that would cause the application of laws of any jurisdictions other than those of the State of California. Any and all legal disputes will go through arbitration process for resolution of this contract. This Contract is being provided on a confidential basis and at no time shall either party disclose or otherwise reveal to any third party any confidential information, code or reference and or any such information advised to the other party as being confidential or privileged without the formal written permission of the other party.

The information presented by **G&C Investment Corp** is not in any way considered or intended to be solicitation of funds of any sort, or any type of offering, but is intended for Project Funding. **G&C Investment Corp** and your associates have requested information from **Goodwill Funding Inc., and/or its affiliates** of your own choice and free will, and further that **Goodwill Funding Inc., and/or its affiliates** have not solicited **G&C Investment Corp** in any way.

It is understood that this contract transaction is strictly private, and that it is in no way relying upon or relating to the United States Securities Act of 1933 or related regulations, and it does not involve the sale of registered securities. Further, **Goodwill Funding Inc., and/or its affiliates** hereby declares and **G&C Investment Corp** is aware that **Goodwill Funding Inc., and/or its affiliates** is not a licensed broker or government employee. **Goodwill Funding Inc., and/or its affiliates** and **G&C Investment Corp** have mutually agreed that this private transaction is exempt from the Securities Act, and is not intended for the general public, and all matters are for PRIVATE USE ONLY.

This communication includes by reference and incorporates the Standard International Non-Circumvention Agreement and conditions as set forth by the International Chamber of Commerce (ICC Publication 500, revised 1994) and is to be applied to any and all transactions between the parties for a period of two (5) years

**IN WITNESS WHEREOF**, this Agreement has been executed by the parties to this Agreement as of the date first set forth above.

 

2013
_____      _____
Charel Winston, C.F.O of Goodwill Funding Inc.              Date


September 15, 2013
_____      _____
**Jorge Garrido, President of G&C Investment Corp**         Date